BENJAMIN B. WAGNER
United States Attorney
KYLE REARDON
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2700





FEB 5 2010

CLERK, U S DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
               DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:09 cr 444 EJG |
| Plaintiff, | **PLEA AGREEMENT** |
| v. | DATE: Friday, February 5, 2010 |
| JERRY VAN LE, | TIME: 10:00 a.m. |
| Defendant. | COURT: Hon. Edward J. Garcia |

I.

**INTRODUCTION**

**A. Scope of Agreement**: The Information in this case charges the defendant with a violation of 18 U.S.C. § 1341, Mail Fraud; 18 U.S.C. § 1343, Wire Fraud; and 18 U.S.C. § 1014, False Statements in Loan and Credit Applications. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

///

B. **Court Not a Party:** The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement. If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.

### DEFENDANT'S OBLIGATIONS

A. **Guilty Pleas:** The defendant will plead guilty to Counts One through Five in the Information. The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are accurate.

　　1. **Waiver of Indictment:** The defendant agrees that, prior to or at the entry of plea proceeding, he will sign a written waiver of prosecution by indictment and consent to proceed by information rather than by indictment.

B. **Financial Obligations:**

　　1. **Restitution:** The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. In addition to that restitution, the defendant agrees that the Court may order full restitution to any person who would qualify

1  as a victim of an offense under 18 U.S.C. § 3663 or 3663A had the
2  defendant been convicted of such an offense. Payment should be by
3  cashier's or certified check made payable to the Clerk of the Court.
4  Defendant further agrees that he will not seek to discharge any
5  restitution obligation or any part of such obligation in any
6  bankruptcy proceeding.

7     2.  **Special Assessment**: The defendant agrees to pay a
8  special assessment of $500 at the time of sentencing by delivering a
9  check or money order payable to the United States District Court to
10 the United States Probation Office immediately before the sentencing
11 hearing. The defendant understands that this Plea Agreement is
12 voidable by the government if he fails to pay the assessment prior to
13 that hearing. If the defendant is unable to pay the special
14 assessment at the time of sentencing, he agrees to earn the money to
15 pay the assessment, if necessary by participating in the Inmate
16 Financial Responsibility Program.

17    C.  **Agreement to Cooperate:** The defendant agrees to cooperate
18 fully with the government and any other federal, state, or local law
19 enforcement agency, as directed by the government. As used in this
20 plea agreement, "cooperation" requires the defendant: (1) to respond
21 truthfully and completely to all questions, whether in interviews, in
22 correspondence, telephone conversations, before a grand jury, or at
23 any trial or other court proceeding; (2) to attend all meetings,
24 grand jury sessions, trials, and other proceedings at which the
25 defendant's presence is requested by the government or compelled by
26 subpoena or court order; (3) to produce voluntarily any and all
27 documents, records, or other tangible evidence requested by the
28 government; (4) not to participate in any criminal activity while

cooperating with the government; and (5) to disclose to the government the existence and status of all money, property, or assets, of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal activities or the illegal activities of any conspirators.

If the defendant commits any crimes or if any of the defendant's statements or testimony prove to be knowingly false, misleading, or materially incomplete, or if the defendant otherwise violates this plea agreement in any way, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. The determination whether the defendant has violated the plea agreement will be under a probable cause standard. If the defendant violates the plea agreement, he shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to perjury, false statements, and obstruction of justice. Because disclosures pursuant to this plea agreement will constitute a waiver of the Fifth Amendment privilege against compulsory self-incrimination, any such prosecution may be premised on statements and/or information provided by the defendant. Moreover, any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees to waive all defenses based on the statute of limitations or delay of prosecution with respect to any prosecutions that are not time-barred as of the date of this plea agreement.

If it is determined that the defendant has violated any provision of this plea agreement or if the defendant successfully moves to withdraw his pleas: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### III.

### THE GOVERNMENT'S OBLIGATIONS

A. Recommendations:

　　1. **Incarceration Range:** The government will recommend that the defendant be sentenced to the low end of the applicable guideline range for his offense as determined by the United States Probation Office. The recommendation is contingent upon the defendant's compliance with the terms of this plea agreement and a recommendation by the United States Probation Office of an total offense level of no less than 24.

　　2. **Acceptance of Responsibility:** If the United States Probation Office determines that a three-level reduction in the defendant's offense level for his full and clear demonstration of

acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction and will so move under § 3E1.1(b), so long as the defendant pleads guilty, meets with and assists the probation officer in the preparation of the pre-sentence report, is truthful and candid with the probation officer, and does not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

       3.  **Reduction of Sentence for Cooperation:** The government agrees to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to 50% of the applicable guideline sentence if he provides substantial assistance to the government, pursuant to U.S.S.G. § 5K1.1.  The defendant understands that he must comply with paragraph II.C. above.  The defendant understands that it is within the sole and exclusive discretion of the government to determine whether the defendant has provided substantial assistance.  The defendant understands that the government may recommend a reduction in his sentence of less than 50% or no reduction at all, depending upon the level of assistance the government determines that the defendant has provided.  The defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a recommendation and is not binding on the Court, that this plea agreement confers no right upon the defendant to require that the government make a § 5K1.1 motion, and that this plea agreement confers no remedy upon the defendant in the event that the government declines to make a § 5K1.1 motion.  In particular, the defendant agrees not to try to file a motion to withdraw his pleas based on the

fact that the government decides not to recommend a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate.

If the government determines that the defendant has provided further cooperation within one year following his sentencing, the government may move for a further reduction of his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

C. **Limitation on Use of Information for Sentencing:** Other than as set forth above, the government agrees that any incriminating information provided by the defendant during his cooperation will not be used in determining the applicable guideline range, pursuant to U.S.S.G. § 1B1.8.

## IV.

### ELEMENTS OF THE OFFENSE

A. **Elements of the Offense:** At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty:

    1. **Count One - Mail Fraud:**

        (a) the defendant knowingly made up or carried out a scheme or plan to obtain money or property by making false statements or promises;

        (b) the defendant knew that the statements or promises were false;

        (c) the statements or promises were material, that is they would reasonably influence a person to part with money or property;

        (d) the defendant acted with the intent to defraud; and

        (e) the defendant used or caused to be used the mails to carry out of attempt to carry out an essential part of the scheme.

A mailing is caused when one knows that the mails will be used in the ordinary course of business or when one can reasonably foresee such use.

   2.   **Counts Two and Three - Wire Fraud**

   (a)  the defendant made up a scheme or plan for obtaining money or property by making false promises or statements;

   (b)  the defendant knew that the promises or statements were false;

   (c)  the promises or statements were material, that is, they would reasonable cause someone to part with their money or property;

   (d)  the defendant acted with the intent to defraud; and

   (e)  the defendant used the wires in furtherance of the scheme or plan.

   3.   **Counts Four and Five - False Statement in Loan and Credit Applications:**

   (a)  the defendant made a false statement or report to a Federal credit union or federally insured bank;

   (b)  the defendant made the false statement or report to the credit union or bank knowing that it was false; and

   (c)  the defendant did so for the purpose of influencing in any way the action of the credit union or bank.

                             V.

                       **MAXIMUM SENTENCE**

A.  **Maximum Penalty:** The maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1341, Mail Fraud is 20 years confinement, a fine of $250,000, a three-year term of supervised release, and a special assessment of $100. The maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1343, Wire Fraud

                              8

is 20 years confinement, a fine of $250,000, and a three-year term of supervised release. The maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1014, False Statement in Loan and Credit Application is 30 years confinement, a fine of $1,000,000, a five-year term of supervised release, and a special assessment of $100. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is <u>not</u> restricted to the amounts alleged in the specific counts to which the defendant is pleading guilty. The defendant further agrees that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B. Violations of Supervised Release:** The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to three additional years imprisonment.

## VI.

### SENTENCING DETERMINATION

**A. Statutory Authority:** The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by <u>United States v. Booker</u> and <u>United States v. Fanfan</u>, 543 U.S. 220 (VI), 125 S.Ct. 738 (2005)) and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline

sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

B. **Stipulations Affecting Guidelines Calculation:** The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

   1. **Offense Level:**

      (a) Count One: Wire Fraud: The base offense level for this offense is 7. See U.S.S.G. § 2B1.1(a)(1).

      (b) Counts Two and Three: Wire Fraud - The base offense level for this offense is 7. See U.S.S.G. § 2B1.1(a)(1).

      (c) Counts Four and Five: False Information on a Credit Application, 18 U.S.C. § 1014: The base offense level for this offense is 7. See U.S.S.G. § 2B1.1(a)(1).

      (d) Grouping: These counts are combined into a single group because of the fact that the offense level is determined largely on the basis of loss. See U.S.S.G. § 3D1.2(d). The offense level is seven (7), the highest offense level in the group. Id. at § 3D1.3(b).

      (e) Specific Offense Characteristics:

         (1) The specific offense characteristics increase the

offense level by 16 levels because the actual pecuniary harm was greater than $1,000,000, but less than $2,500,000. See U.S.S.G. § 2B1.1(b)(1)(I).

    (2) Two (2) levels are added because the offense involved 10 or more victims. See U.S.S.G. § 2B1.1(b)(2)(A).

    (3) Two (2) levels are added because the offense involved sophisticated means. See U.S.S.G. § 2B1.1(b)(9)(C).

    (g) <u>Total Offense Level</u>: The total offense level is 27.

    **2.  Acceptance of Responsibility:** See paragraph III.A.2 above.

    **3.  Criminal History**: The defendant's criminal history category will be determined by the United States Probation Office.

    **4.  Sentencing Range:** The defendant's sentencing range will be determined by the United States Probation Office.

    **5.  Departures or Other Enhancements or Reductions:** The parties stipulate and agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references. Both parties stipulate and agree not to move for, or argue in support of, any departure from the Sentencing Guidelines, or any deviance or variance from the Sentencing Guidelines under <u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738 (2005).

## VII.

## WAIVERS

    **A.  Waiver of Constitutional Rights:** The defendant understands that by pleading guilty he is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if

11

already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

   B.   **Waiver of Appeal and Collateral Attack:** The defendant understands that the law gives him a right to appeal his conviction and sentence.  He agrees as part of his pleas, however, to give up the right to appeal the conviction and the right to appeal any aspect of the sentence imposed in this case so long as his sentence is no longer than the top of the Sentencing Guidelines range determined by the Court consistent with the stipulations set forth above about the Sentencing Guidelines variables (that is, an adjusted offense level of 27 or below).  He specifically gives up his right to appeal any order of restitution the Court may impose.

   Regardless of the sentence he receives, the defendant also gives up any right he may have to bring a post-appeal attack on his conviction or his sentence.  He specifically agrees not to file a motion under 28 U.S.C. § 2255 or § 2241 attacking his conviction or sentence.

   If the defendant ever attempts to vacate his pleas, dismiss the underlying charges, or reduce or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement.  The decision to pursue any or all of these options is solely in the discretion of the

12

United States Attorney's Office. By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision. In particular, he agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

  **C. Waiver of Attorneys' Fees and Costs:** The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

  **D. Waiver of DNA Testing:** Defendant has been advised that the government may have in its possession items of physical evidence that could be subjected to DNA testing. The defendant understands that the government does not intend to conduct DNA testing of any of these items. Defendant understands that, before entering guilty pleas pursuant to this Plea Agreement, he could request DNA testing of evidence in this case. The defendant further understands that, with respect to the offenses to which he is pleading guilty pursuant to this Plea Agreement, he would have the right to request DNA testing of evidence after conviction under the conditions specified in 18 U.S.C. § 3600. Knowing and understanding his right to request DNA testing, the defendant knowingly and voluntarily gives up that right with respect to any items of evidence there may be in this case that might be amenable to DNA testing. The defendant understands and

13

acknowledges that by giving up this right, he is giving up any ability to request DNA testing of evidence in this case in the current proceeding, in any proceeding after conviction under 18 U.S.C. § 3600, and in any other proceeding of any type.  The defendant further understands and acknowledges that by giving up this right, he will never have another opportunity to have the evidence in this case submitted for DNA testing, or to employ the results of DNA testing to support a claim that defendant is innocent of the offenses to which he is pleading guilty.

## VIII.
### ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.
### APPROVALS AND SIGNATURES

**A.  Defense Counsel:** I have read this plea agreement and have discussed it fully with my client.  The plea agreement accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to plead guilty as set forth in this plea agreement.

DATED: 2/5/10

MARK S. AXUP
Attorney for Defendant

**B.  Defendant:** I have read this plea agreement and carefully reviewed every part of it with my attorney.  I understand it, and I

voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

DATED: 2/5/10                              _____
                                           JERRY VAN LE
                                           Defendant

    C. **Attorney for United States**: I accept and agree to this plea agreement on behalf of the government.

DATED: 2/5/10                              BENJAMIN B. WAGNER
                                           United States Attorney


                                           By: _____
                                               KYLE REARDON
                                               Assistant U.S. Attorney

# EXHIBIT "A"

## Factual Basis for Plea Pleas

The parties agree that if this matter proceeded to trial, the United States would be able to prove the following facts beyond a reasonable doubt:

On or about June 23, 2006, Jerry Van Le aided and abetted the fraudulent purchase by Melanie Mangahas of a home located at 1108 Mullinger Lane, Lincoln, California. This home was financed by Meridias Capital of Salt Lake City, Utah in the amount of $378,674,00. In the course of securing a loan from Meridias Capital, the defendant and Ms. Mangahas caused mailings and wire communications to be made in furtherance of the fraud. Specifically, Meridias Capital mailed to Melanie Mangahas a Uniform Residential Loan Application on or about June 6, 2006. Melanie Mangahas signed this application on or about June 23, 2006, even though it contained materially fraudulent statements about Ms. Mangahas' employment by Bargain Furniture and her income. In a phone interview with a Meridias loan underwriter on June 23, 2006, the defendant verified Ms. Mangahas' bogus employment information. In support of the application, the defendant also submitted a letter in which he represented that he was the "Owner/Operator" of Bargain Furniture and that sales representatives for the company, like the loan application stated that Ms. Mangahas was, earned up to $12,000 per month in sales commissions.

On or about July 23, 2006, Jerry Le aided and abetted the purchase of a 2003 BMW by his girlfriend at the time, Melanie Mangahas. This vehicle was financed by Schools Financial Credit Union, a federally insured credit union, located in Sacramento,

A-1

California. In completing the loan application for the vehicle, Jerry Le prepared and submitted on behalf of Melanie Mangahas two fraudulent income statements from Bargain Furniture that stated that Melanie Mangahas worked for Bargain Furniture and earned $7,834.23 every two weeks. This information was false as Melanie Mangahas was not employed at the time of the purchase and did not earn $7,834.23 every two weeks. Schools Financial Credit Union relied on the documentation prepared by Jerry Le and submitted on behalf of Melanie Mangahas to fund the loan for the purchase of the 2003 BMW.

Prior to July 23, 2008, the defendant began creating fraudulent identities for the purpose of using these identities to establish lines of credit. In order to create these identities and their accompanying credit histories, the defendant would utilize contacts within the finance industry to assist in building fraudulent credit histories for the identities he developed. When the defendant applied for credit using these identities, the credit bureaus would report that the defendant was a good credit risk based upon the bogus histories that had been created for them. Identities created by the defendant for this purpose included Karl Dunmoore, social security number xxx-xx-2256; Thomas Johnson, social security number xxx-xx-1777; and Joseph Lee, social security number xxx-xx-8761. None of these social security numbers had been assigned by the Commissioner of Social Security to the defendant. The defendant also possessed a fake California driver license with his picture in the name of Karl Dunmoore.

In addition, for a fee of between $3,500 and $6,000, the defendant assisted others in establishing false identities with fraudulent credit histories. Once credit histories were established

A-2

under the false identities for the defendant's clients, the defendant would instruct and assist the clients in obtaining lines of credit from banks, credit card companies, and car dealership. In total, Jerry Van Le assisted in the creation of fraudulent credit histories for approximately 40 clients.

On July 23, 2008, the defendant applied for a credit card from Bank of America using the name Karl Dunmoore and the social security number xxx-xx-2256.

On November 4, 2008, the defendant applied for a credit card from Bank of America in the name of Thomas Johnson with a social security number of xxx-xx-1777.

On January 3, 2009, the defendant applied for a credit card from Bank of America in the name of Joseph Lee with a social security number of xxx-xx-8761.

Bank of America is a bank whose deposits are insured by the Federal Deposit Insurance Corporation (FDIC). Upon receiving a favorable credit history for the three applicants identified above, Bank of America issued a credit card for Karl Dunmoore, Thomas Johnson, and Joseph Lee. Bank of America's decision to issue these credit cards to the defendant was influenced by the false information that he provided in his application.

On August 23, 2008, the defendant went to Toyota Town in Stockton, California in order to purchase a new vehicle. The vehicle was financed through the Toyota Financial Services (TFS), the in-house finance agency for Toyota Motors, located in Elk Grove, California. In his application for credit from TMC, the defendant wrote on his credit application that his name was Karl Dunmoore and his social security account number was xxx-xx-2256.

Toyota Town, working with TFS, used the name and social security number provided by the defendant to run a credit check through the major credit bureaus, including Trans Union. The false name and social security number provided by the defendant were sent electronically to the Trans Union offices in either Chester, Pennsylvania or Chicago, Illinois. Trans Union returned a positive credit report based upon the false information provided by the defendant and upon that basis, TFC financed the purchase by the defendant of a 2008 Toyota Tundra from Toyota Town. The amount financed was $20,000.

The defendant repeated his misrepresentations about his identity and social security number on December 15, 2009, when he purchased a Mercedes from Mercedes Benz of Sacramento that was financed by Daimler Chrysler Financial Services USA LLC. Prior to the financing of this car, a credit check for the name Karl Dunmoore with the social security number xxx-xx-2256 was sent by the Mercedes Benz of Sacramento to Trans Union. Based upon receipt of a favorable credit report for this name and number, DCFS financed the purchase by the defendant of a Mercedes ML63 from Mercedes Benz of Sacramento. The amount financed was $87,278.87

As part of his fraudulent scheme, the defendant established Van Le Investments. As part of this business, the defendant set up a business account and obtained a merchant teller machine from Wells Fargo. A merchant teller machine is designed to record credit and gift card transactions for a merchant and report them to the bank. Between July 7, 2008, and December 22, 2008, the defendant utilized the merchant teller machine to run deposit approximately $198,000 in fraudulently obtained monies into the Van Le investments account.

A-4

These monies were debited from fraudulent obtained credit cards acquired by the defendant on his own behalf and on behalf of others through his credit repair business.

    The total loss from the defendant's own fraudulent activities, and the losses sustained as a result of the fraudulent credit applications submitted by the clients of his credit repair business were between $1,500,000 and $2,000,000.

A-5